Good morning. Well, we have one case on our agenda for today. Capato v. Commissioner of Social Security. Number 10-2027. Counsel, you would like to reserve time, I take it? Yes, Your Honor. Three minutes, please. That's granted. You may proceed. May it please the Court, Paul Hughes for Plaintiff Appellant Karen Capato. As the Court is aware, this case is on remand from the Supreme Court to determine whether the Capato twins qualify for benefits under the Social Security Act. As the Court has instructed, the relevant inquiry is Section 416H2A of the Social Security Act. In concluding that the twins do not qualify, the ALJ made two distinct errors. I'd like to begin with the question as to Florida law. The government and the district court below focused on Section 742.17 of the Florida statute. That's the domestic relations provision. That provision provides that an after-conceived child cannot bring a claim against an estate unless the child is provided for in the decedent's will. You argue in your briefs that this is wholly inapplicable, but yet the title does say rights of inheritance. Your Honor, we make two arguments in our briefs. The first is if you look to the definition of claim as claim is used in the probate section, the claim in those provisions of the laws do not apply in this context. Our second argument, though, and where I'd truly like to focus, is that even taking down face value that this does apply to inheritance rights, we satisfy what the statute requires. And that is a will that provides for later born and later conceived children. You have said that in your brief, but you don't tell us explicitly where in the will that provision is, but rather you segue into extrinsic evidence. Your Honor, the place in the will that I would direct the Court's attention, it's at remand appendix page 26. It's article one of the will, and that provision of the will states that for references to, and I'm quoting now, references to my descendants for purposes of article five and six shall mean only children born to me as a result of my marriage to Karen Capado. But under Florida law, the marriage ended at Mr. Capado's death. Yes, Your Honor. It is clear that the marriage ended at Mr. Capado's death. Before conception took place. Yes, Your Honor. So it is the case that the children were not born during the marriage. But the will does not ask or does not limit the rights to children born during the marriage. It limits rights to children that were born as a result of the marriage. And I think it's very clear that these children were born as a result of the marriage. But help me out with the language of the statute then, because it seemed to me that the only way, it seemed to me that the statute was providing for a way in which a parent may be able to take care of his children through the will, but under the intestacy laws, there still is no provision that provides for after conceived children. Your Honor, our interpretation is that 742.17 provides a gateway that does actually access the intestacy laws when it's triggered, such that when a child is provided for by a will. That makes no sense, though. I mean, they're provided for in a will, yet they're covered by the intestacy law? Your Honor, there are a few reasons for this. For one, the intestacy laws are frequently triggered when even in the context of a will. This occurs when a will does not dispose of all the decedent's property. If there's something remaining, there's recourse to the intestacy laws. This will, in fact, incorporates the intestacy laws as a backstop for any property that's not disposed of by the terms of the will. The second point, though, the reason that 742.17 should be interpreted in this way is it's very similar to what other states that provide for after conceived children do, which is they condition intestacy rights to some written statement of an intent by the decedent to parent after his death. But we're not in other states. We're in Florida. Yes, Your Honor. And our contention is that's the best understanding of what 742.17 means in Florida, is that once you're provided for in a will, as Paragraph 4 requires, that then triggers intestacy rights. And if we look to the very language of that paragraph, of Paragraph 4, it says one cannot have a claim against the estate unless one is provided for in the will, which would suggest if one is provided for in the will, one can have a claim against the estate. But the language doesn't limit the kind of claim that one can have against the estate, and it is our submission that this individual would be considered like any other decedent. Well, let me, I mean, perhaps I'm repeating what Judge Van Aske said, but do we even need to get to the will? I mean, doesn't Section 416H2A just call for just look at a state's intestate law? Because if we get, I mean, perhaps this is a policy matter where we want to look at each state as opposed to each individual and whether there's a will that covers it or not. Why is it relevant that there's a will here at all? Well, Your Honor, what H2A directs is to apply the laws of the state to determine whether or not this individual's Intestate law. Yes, Your Honor. The laws of the intestacy. It is the government's contention that 742.17 under Florida law modifies the state's probate laws. So in the government's view, it should be incorporated as part of the intestacy laws. Our contention is taking that argument, assuming that is correct, that, in fact, we find is actually very valuable to Ms. Capato because that demonstrates precisely why the will creates, as I said earlier, this gateway into the intestacy law. Now, in addition, though, as Your Honor suggests, we do move to the extrinsic evidence after as indication as to what Nick intended to do with this will. Well, it says in the statute, by the will. It doesn't say there's no ambiguity there. Is there such that one even gets to extrinsic evidence? Well, Your Honor, the purpose of extrinsic evidence under the Florida probate law is to inform what the will itself means. But the will itself is clear, isn't it? You won't agree with me because you want to get to extrinsic evidence. I understand. Well, Your Honor, I would suggest that it's clear that it does include these children because these children are born as a result of the marriage. In fact, the ALJ, page 6 of the ALJ's opinion, the ALJ states that Nick intended to parent even after his death. The ALJ credits this testimony. Remand Appendix, page 65, for instance, Karen says these children were children that Nick and I decided during his lifetime to have. We named these children. And then the extrinsic evidence is we went to a lawyer and said we want to include these children in our will. Then why didn't the ALJ award child survivor benefits? Well, Your Honor, the ALJ did construe the will differently than we believe is the proper construction. So it is correct, Your Honor, that the ALJ did find that they were not provided for in the will. We think that was a mistake of law. We think the will is read as providing for the children in this kind of circumstance. And the district court considered all of that and agreed, found that the ALJ should be affirmed, that the administration should be affirmed. Yes, Your Honor. I'm not sure there was a specific finding at the district court stage as to precisely who was the child survivor. Was there a process before the district court? I believe we did, Your Honor. I'll have to look for a record site on that. But no, we have maintained throughout that under Florida law, the children would be entitled to take, including by reference to section 742.17. And again, the evidence of the intention here is very clear. The in vitro fertilization agreement, for instance, that was signed, this is at page 23 of our remand appendix, makes crystal clear that these individuals or children that would be born from the IVF treatments would be heirs in all respects, including for the descent of property. And there's nothing otherwise contrary about Florida probate statute in interpreting 742.17 to provide this means of establishing an intestacy. Your Honor, there are two potential questions on remand. One is the law of the state of domicile, and the other is the state of domicile. You really aren't pushing Washington, are you? Your Honor, I think as we explained in our briefs, the ALJ failed to make a critical factual determination, which was what was Nick's intent. When he was left Washington with an ultimate intent of moving to New Jersey, did he ever have the intent to remain in Florida indefinitely? As we explained in the briefs, we think there's a very — that the ALJ failed to make this necessary factual finding. And — Well, under your definition of intent, I mean, as I read your definition of intent, it's one can't be a domiciliary of a state unless one intends when he moves to stay there forever. Well, not forever, Your Honor. It is — this is a unique situation where a person is moving from point A to point C, but they have a point B in the middle. And our contention is in that unique kind of circumstance. But they have a point B and a point C, because they moved from Washington to Colorado for two years and then to Florida for three years. Absolutely, Your Honor. But you're saying the domicile remains Washington. Yes, Your Honor. That until they arrive at a place where they intend to remain indefinitely, which means they don't have a present intent to move somewhere else. But how do we get beyond our deferential standard of review here? I mean, what is it about this case that would cause us to conclude that a reasonable mind would not accept as adequate the facts sufficient to support a finding that his intention was to establish a domicile in Florida? Well, Your Honor, at page 6 of the ALJ's decision, the ALJ says intent is not relevant to this inquiry. The ALJ expressly disclaims any inquiry into what Nick's intent was. And that's a fundamental error, both of finding a fact and of law. Isn't there a presumption of domicile in Florida? Well, Your Honor, there are a couple of different presumptions. That's the Supreme Court. Well, Your Honor, there are a few presumptions. The presumption that we think is most important in this case is when somebody is moving. We know that Nick had a domicile before he got to Florida. He had never previously lived in Florida. We know that he had a domicile that was something other than Florida. The Supreme Court has You say that was Washington. Yes, Your Honor. Yes, Your Honor. Sure, he was born there. Yes. Yes, Your Honor. And then they went to California. He went to California for 10 years at some point. And then in the 90s, he moved back to Washington and left Washington. Went to Colorado and then went to Florida. And you're saying Your Honor, when he was in Washington in the 90s, after his time in California, he had lived there. He had no intention of leaving. He says, I want to live here permanently. And then he moved twice. Well, when he left Washington, he certainly was relinquishing that domicile once he established a new one. But our contention was he had not yet established a new domicile. I just have one more question, Counselor. I've got some law clerks who are pretty good at legal research. Are there any cases besides Stephen that construe Section 742.17? Your Honor, I have looked at that question specifically. Other than Stephen, I have seen no cases that come to mind that are particularly instructive. I believe, though, a Okay, they get to keep their jobs then. I believe there was a Massachusetts case that touched on it very briefly in pointing to Florida as one of the few states that had looked at this kind of question via statute. But the treatment is very slim. And I will say while on that point, Your Honor, I think that suggests in the strongest of terms that to the extent there is ambiguity as to what a Florida court would do with Section 742.17, that this would be an ideal case for certification for a Florida court to make that determination. Thank you, Counsel. We'll hear from Ms. Gilbert. I know this isn't going to fit up here. May it please the Court, Helen Gilbert for the Federal Government. Your Honor, there are two questions before you today, one regarding domicile and the other regarding Florida law. But I'd like to just jump into the Florida law question because that seemed to have taken up most of the plaintiff's argument today. The will in this case is completely irrelevant. Florida law is clear, as is the Social Security Act. The Social Security Act prescribes that you look to whether or not these children could inherit intestate. So we look to Florida intestacy law. And the key provision here is 732.101 subpart 2, which says that you determine the heirs under the intestacy code at the death of the decedent. In this case, these children were not alive at the time the decedent passed away. So therefore, they cannot take as heirs. Now, Florida has an exception that's very common in many states, intestacy codes, and that's for after-born heirs. And that's found at 732.106. And in that case, children who are conceived before the death of the decedent but born thereafter are entitled to take under the intestacy code. And that doesn't apply. Exactly, Your Honor. That does not apply here. So those are the key provisions here. What about 742.17, which seems to apply to this fact pattern? You're correct, Your Honor. And that confirms what the Florida legislature's intent was to make sure that children such as these unfortunately can't inherit intestate. So that provision addresses four different situations arising from relatively new technology having to do with reproduction. And the last provision has to do with children such as these. And it confirms that the only way those children can inherit is if they're provided for by will. Therefore, they can never inherit intestate under Florida law. A number of other states have very similar provisions, even without 742.17, and state Supreme Courts such as Nebraska and Michigan have very recently interpreted those similar provisions to state that posthumously conceived children cannot inherit intestate. Therefore, we think the answer is quite clear. Florida law does not apply to allow these children to inherit intestate, and therefore they're not permitted to inherit, excuse me, they're not permitted to share in the child insurance benefits of Mr. Capato. On the domicile question, we also think the evidence clearly supports the ALJ's finding. There is a presumption, as Judge Berry pointed out, that the, excuse me, that your domicile is your state of residence here. No one contests that he was domiciled in Florida upon his death. Second, it's the plaintiff's burden in this case to show that he intended to live elsewhere before he moved to Florida. And there's no evidence in the record suggesting that when Mr. Capato moved to Florida, he had a definitive plan to leave and go somewhere else. Is that the test? Is it a definitive plan? Is that the test? Your Honor, the test is whether or not there is an intent to not remain indefinitely. So here, Mr. Capato would have had to plan to leave Florida and had a definitive plan, and that's not the case. But it's his, it's the plaintiff's burden. I know there's a dispute. Mr. Hughes says it's your burden. I think the law says the presumption is on the plaintiff. And the question, if that is the test, and I'm not entirely sure we have to even get that complicated, but that burden hasn't been met by virtue of the evidence in this case, has it? That's correct, Your Honor. There's not even any evidence to show where Mr. Capato was domiciled before Florida. So the ALJ looked at the evidence the plaintiff put into the record and determined that Florida was Mr. Capato's state of domicile. Would you please respond to Mr. Hughes' argument that the ALJ committed an error of law by saying intent is irrelevant? Sure, Your Honor. One, I don't think that's correct. I think the ALJ looked at the evidence before him and determined that if there was any intent to move to New Jersey, all of that happened after Mr. Capato had moved to Florida. And in that sense, that intent was irrelevant. Because as I believe it's Gallagher has made clear, you look to the intent of the individual at the time they moved to whichever state they're moving to, and there's no evidence in the record showing that before he moved to Florida, he intended to not remain there. A vague possibility of moving in the indefinite future is not enough to show that Well, he did incorporate. There's evidence in the record of a friend and, of course, his wife who said they clearly intended to go there. There's family there. But that was in 2001, the summer of 2001, not when he moved in 1999, correct? Yes, Your Honor, that's correct. So there is evidence showing, and the ALJ fully credited Mr. Capato's testimony. The ALJ fully credited Everett's testimony. That's right, Your Honor. But I think the most definitive evidence that they've Was that a problem? Not in this case, no. Okay. Not at all. The ALJ's, Mr. Capato testified, I think, most definitively about their plan to move to New Jersey and says, after he was diagnosed with cancer, after we had our first child. So the diagnosis was in 1999. The first child was born in 2001. She says, then we decided we really needed to move to New Jersey. But that's after they had already moved to Florida. And under the clear law of this circuit and the Supreme Court, that's not enough to show that he was not domiciled. Subsequent to that time, the will was executed in Florida. Exactly, Your Honor. And the other evidence of ties to New Jersey really had to do with Mr. Capato's businesses, not with their residents. If the Court has no further questions, we rest in peace. Just one little thing, and I think it's a rhetorical question. Justice Ginsburg, in the course of taking us to the woodshed, used the word that there were two issues on remand which, if preserved, we can consider. I haven't heard the government to be arguing that they weren't preserved. Is that correct? That's correct, Your Honor. These are fully preserved. Well, let me ask you a related question. You complained in your brief that the plaintiff had said he was domiciled in Washington, and then New Jersey, and then Florida, back to New Jersey, or whatever you'd said. Is there any waiver argument you're raising, or are you just pointing that out to us? No, Your Honor, we're not raising a waiver argument. Or a stop call or whatever? No, we – and that was all briefed before the ALJ, before the ALJ's hearing. So we're not – there's no waiver argument here at all. We're only pointing out that even the plaintiff had a hard time determining where they wanted to say that Mr. Capato was domiciled. And I think that's reflected in the lack of evidence in the record. Also, there was also a very interesting Ninth Circuit case which made the decision a little easier the third time. That's correct, Your Honor. The acquiescence ruling in the Ninth Circuit, which no longer applies after the Supreme Court's decision. All right. Thank you, counsel. Thank you, Your Honor. Thank you, Your Honor. Just a few points in rebuttal. To turn to the Florida law, the government, again, makes the contention that the will is irrelevant because the relevant analysis under the federal statute is the Florida intestacy. Although that is correct, that does not mean, though, that a will and intestacy laws don't coexist. They frequently do, in fact, coexist, whereas, as I explained earlier, intestacy laws necessarily provides the backstop for even when there is a will. Section 742.17, then, is very well read as when an individual is provided for in a will. It's a little bit backwards, though, to suggest that the will identifies who can recover under an intestacy law. And, Your Honor, the reason that that actually does make sense, because it looks to how some of the other states have construed similar policies, is that many states, and again, Florida, if given the opportunity to confront this, I think, would construe 742.17 similarly, state that they limit those individuals who can take an intestacy to those that the decedent had acknowledged that he had or she had intent to parent before the time of death. So there is often a written writing requirement to delimit as a policy matter who would be eligible under intestacy. Have there been any steps taken in connection with the administration of Mr. Capato's estate to provide for the twins? There were several steps that were taken by Nick in terms of ensuring that his insurance benefits. No. Since he passed away. Your Honor, I'm not aware of any that were in connection with a particular probate proceeding. Okay. But our interpretation is also bolstered by Florida law, which, as a common law matter, provides very broadly for lineal descendants. The presumption under Florida law is that the intestacy statutes are meant to follow the affections of the individual who passed on and that the court presumes that affections follow a genetic connection. So if confronted with this question, there's every reason to believe that a court would view 742.17 as providing the. Can you repeat that? Yes, Your Honor. Florida law, the common law under intestacy, which informs that the. I mean, this thing about follows. The intestacy rights follow the familial connection and the genetic connection between parent and child, because the presumption is that a testature intends to provide for family in their will, and that follows their affections. And that is the. The word affections, it seems to me, is an interesting word. And, Your Honor, I believe that's. And, Your Honor, I believe that is one that is used by the courts in explaining what the intestacy laws were designed to do. But just to conclude, Your Honor, is that this is very certainly a case of first impression under Florida statute, that the Florida courts, if confronted with this, would have substantial discretion. And as many other courts have done, we think this is an ideal case to certify if there's any doubt as to how a Florida court would construe the statute in these circumstances. Thank you. Thank you, counsel. Thank you for the excellent oral arguments and excellent briefs. Very good in this very interesting case. We'll take the case under advisement, and will the clerk adjourn.  Thank you.